JOHN HOFFMAN, ADMINISTRATOR OF MARGARET HOFF-
MAN, DECEASED, APPELLANT, *v.* THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COM-
PANY, RESPONDENT.

*Contributory negligence — when a question for the jury.*

This action was brought to recover damages for the death of plaintiff's intestate alleged to have been caused by defendant's negligence. At Amboy the defendant had four tracks, numbered from the south 1, 2, 3 and 4; 1 and 2 being for passenger, and 3 and 4 for freight cars. Upon land adjoining the southerly tracks owned by the defendant, it had erected a station and a plank sidewalk, leading westerly about 100 feet to a highway. At the time of the accident the plank-walk was so obstructed with snow as to be impassable. East of the highway cattle guards had been constructed, the southerly two being planked over and the northerly two left open, but the two latter were, at the time of the accident, so filled and covered over with snow, as to be entirely concealed.

The plaintiff's intestate who lived on the aforesaid highway, a few rods northerly from the crossing, arrived at Amboy in the morning with two children, one about three years old and the other an infant, and was assisted from the cars on the southerly side of track No. 2; she started to walk westerly and diagonally across the tracks toward the highway, the shortest route to her house; a gravel train was approaching on track No. 3; after she had walked about fifty feet she fell into the cattle guard which was concealed by the snow, and before she could extricate herself she was run over by the gravel train and killed. If she had not so fallen she would have had time enough to cross the track before the train would have reached that point. The justice at the Circuit granted a nonsuit. *Held,* that this was error and that the case should have been submitted to the jury.

APPEAL from a judgment in favor of the defendant for costs, after a nonsuit directed at the Circuit.

*Isaac F. Garfield,* for the appellant. The deceased was a passenger on the defendant's railroad, and it (the defendant) was under an obligation to provide for her an easy and safe mode of egress from its station to the nearest street, and until it did so, its liability as a carrier of passengers did not terminate. (*Dillaye* v. *New York Central Railroad Company,* 56 Barb., 30 and 38 ; *Hulbert* v. *New York Central Railroad Company,* 40 N. Y., 145 ; see pp. 150, 151 and 152; 97 Mass., 275, p. 278.) The rule that the defendant owed a legal duty to the deceased, she being a passenger,

although injured upon defendant's land, is laid down in *Nichol-son* v. *Erie R. R. Co.* (41 N. Y., 533; opinion by EARL, Ch. J.). The deceased had ample time to have crossed had she not fallen into the guard, and under such circumstances negligence cannot be predicated upon her attempt to cross the track. (*Aaron* v. *Second Ave. R. R. Co.*, 2 Daly, 127; *Baxter* v. *Same*, 3 Robt., 570; *Mentz* v. *Same*, 3 Abb. Ct. App. Dec., 274; affirming, 2 Robt., 356.)

*G. N. Kennedy*, for the respondent. There was no question for the jury. The conduct of the plaintiff in running as she did, incumbered with her children and bag, directly across defendant's tracks, and in front of an approaching train, was an act of contributory negligence. (*Belton* v. *Baxter et al.*, 54 N. Y., 245; *Barker* v. *Savage*, 45 id., 193; *Filer* v. *N. Y. Central R. R. Co.*, 49 id., 51; *Wilcox, Admr., etc.* v. *Rome and Watertown R. R.*, 39 id., 358.) The attempt to cross in front of an approaching train is recklessness. (*Gonzales* v. *N. Y. and Harlem R. R. Co.*, 38 N. Y., 443; *Warner* v. *N. Y. C. R. R.*, 44 id., 466.) The facts in this case being uncontradicted, the question of negligence is one of law for the court. (Same case, p. 442; *Mitchel, Admr.*, v. *N. Y. Central and H. R. R. R. Co.*, 64 N. Y., 655; *Kenyon* v. *N. Y. C. and H. R. R. Co.*, 12 Supreme Court Rep., 481.)

TALCOTT, J. :

This is an appeal from a judgment rendered in favor of the defendant for costs, on a nonsuit ordered at the Onondaga Circuit.

The action is to recover damages for the alleged negligence of the defendant, whereby it is claimed that the plaintiff's intestate was killed on the morning of the 16th of December, 1875. The plaintiff on that morning was a passenger on one of the trains of the defendant from Syracuse to Amboy station, near which latter place she resided, and which is a small way station on the defendant's road a few miles west of Syracuse. At Amboy station the defendants have four tracks numbered, respectively, from the south, 1, 2, 3 and 4. The two southerly tracks are used for passenger cars and the two northerly for freight cars. The defendant had erected a small station at this place which was upon their land on the south-

erly side of the tracks, and about 100 feet easterly from a point where the tracks of the defendant crossed a highway. In order to afford proper access for foot passengers to and from the station-house to the highway, the defendant had constructed on their own land, and westerly from the station along the southerly side of the four tracks, a plank sidewalk. But there had been several falls of snow at the place, and although it was a bright and clear morning when the deceased arrived at the station, a light snow of some few inches in depth had fallen the night before. The snow had so drifted in upon the plank sidewalk and been, by the employes of the defendant, shoveled from the tracks on to the plank-walk, that the latter was obstructed and rendered, according to some of the witnesses, impassable for foot passengers, so that the sole means of egress from the station to the highway, was by walking over the space occupied by the tracks. On the easterly side of the highway the defendants had constructed near the line of the highway, perhaps partly in the highway, cattle guards under each of its four tracks. The two southerly of these cattle guards were, however, planked over, so that they could be passed over both by passengers and animals. The two northerly cattle guards were, however, left open under the freight tracks, but at the time of the accident, resulting in the death of the intestate, they were filled with snow, and by the snow fall of the night before so covered up and concealed, that there was nothing to disclose to the passer-by that the cattle guards existed.

The intestate arrived at Amboy station about eight o'clock in the morning. Her house was on the highway a few rods from the railway crossing; she arrived, as before stated, with her two children, one about three years old and the other an infant in arms; she was assisted out of the car on the southerly side of track No. 2, on which she came, and after waiting for the cars to pass on westerly by reason of the plank sidewalk being obstructed, as aforesaid, she undertook to cross the four tracks diagonally, the shortest route to her home, which was north of the railroad crossing. At this time there was a gravel train upon track No. 3, the track next north of the one upon which the intestate had arrived at the station, and taking her infant in her arms and a small satchel in her hand and leading the other child by her other hand, she pursued the route indicated for the distance of about forty-five feet, when she fell into the

cattle guard under track No. 3, and before she could recover herself was run over by the gravel train and instantly killed. The engineer of the gravel train blew the whistle as a signal to alarm persons who might wish or attempt to cross the track, but at what distance from the highway crossing did not clearly appear. At any rate the deceased probably saw the gravel train approaching and kept on in her course, having, as the court assumed, sufficient time to cross track No. 3, on which the gravel train was advancing, had she not fallen into the cattle guard.

It was held in *Dillaye* v. *The New York Central Railroad Company* (56 Barb., 30), MULLIN, J., delivering the opinion of the court, that a railway company owes to its passengers the duty of providing a safe and easy mode of egress from its station to the nearest highway. This was held in a case in which the passenger injured, was riding upon a freight train. The decision was reversed in the Court of Appeals (see 2 Alb. Law Journal, 356), without, however, questioning that the duty indicated by the Supreme Court was applicable in the case of a passenger upon a regular passenger train, the court holding that the receipt of fare from such passengers as succeed in getting on a freight train cannot be considered as a general invitation to the public to ride in that way at their pleasure.

Here, the proper pathway was obstructed so as to be rendered, in some sense, impassable, and there was no other mode of egress from the defendant's station, except along or across its track. (*Hulbert* v. *The N. Y. Central, etc.*, 40 N. Y., 145.) The question then arises whether, supposing the deceased to have seen the gravel train, perhaps before she actually reached the third track, and there being, apparently, sufficient time to have allowed her to cross the third track in safety, was it her duty to have instantly stopped, and was her omission to do so such clear evidence of negligence on her part that her administrator cannot recover even though she fell into the cattle guard and was thus prevented from crossing? On this subject we are referred, by the counsel for the respondent, to the case of *Belton* v. *Baxter* (54 N. Y., 245), in which a judgment for the plaintiff was reversed by the Commission of Appeals, upon the principle that it is negligence *per se* for a foot passenger to attempt to cross a public thoroughfare, upon a nice calculation of chances of injury, and that, if in such case, the attempt be made

and the calculations fail, to the plaintiff's harm, he can have no redress for injuries received in his mistaken effort. But the case of *Belton* v. *Baxter and others*, was again tried and in process of time, came again on appeal before the Court of Appeals proper, and is reported in 58 New York, 411, where that court, upon a slight difference in the verbiage of the evidence, reversed a judgment of nonsuit which had been rendered upon the second trial. ALLEN, J., delivering the opinion, says: "Upon the whole evidence before us, it is not conclusively shown or necessarily to be inferred that the plaintiff knew or had reason to believe, at the time of his attempt to cross the avenue, that the cart, instead of following the car, had turned off and was passing it. * * * If such was the fact, it was not sworn to by the plaintiff; neither is it a necessary inference. * * * If the fact is to be inferred from the evidence, it must be drawn by a jury and not by the court. * * * If the evidence is conflicting, is capable of different interpretations, or the inferences to be drawn from it are doubtful, it is the province of the jury to pass upon it. * * * Whether it was prudent or imprudent for the plaintiff to attempt to cross the avenue under all the circumstances will be for the jury to determine. * * * It was error to nonsuit the plaintiff on that ground."

So here, there was some evidence, so that the court at one time assumed, that if the deceased had not fallen she would have had ample time to have got across. See *Mentz* v. *Second Avenue R. R. Co.* (3 Abbott's Court of Appeals Decisions, 274), where it was held that the rule requiring care and diligence on the part of the plaintiff, does not require him to anticipate the possibility of an accidental fall at an ordinary crossing:

In this case the leaving of the plank sidewalk in such a condition as that passengers from the station to the highway, were obliged to take the defendant's tracks, and then suffering the snow to accumulate in an open cattle guard, so that there was nothing discernible upon the surface to indicate the existence of a cattle guard or any other hindrance to a safe and expeditious crossing operated as a mere trap. It is said that the deceased lived near the neighborhood of these cattle guards, and had, several times before, traveled on the railroad to and from Syracuse, and that consequently she must be presumed to have known all about the cattle guards. It does not appear that she had

been there before when the guards were filled with snow, or when they were not readily observable, and she could scarcely be expected by a mere effort of memory, to be able to fix the exact location of the cattle guard into which she fell. That she did not, seems obvious, and we think that, under the circumstances of this case, it should be left to the jury to say whether the deceased would have had sufficient time to have crossed track No. 3 in safety, notwithstanding the approach of the gravel train, had it not been for the concealed cattle guard, left so by the negligence of the defendant, and into which she fell while making the attempt to cross. The nonsuit, we think, was erroneous for the reasons stated.

Judgment reversed and new trial ordered, costs to abide the event.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Ordered accordingly.